1  MORGAN, LEWIS & BOCKIUS LLP          LAW OFFICES OF PENG WANG
   Mark L. Krotoski, Bar No. 138549        Peng Wang, Bar No. 241740
2  mark.krotoski@morganlewis.com          peng@pengwanglaw.com
   1400 Page Mill Road                    2490 Sand Hill Road
3  Palo Alto, CA  94304                   Menlo Park, CA 94025
   Tel:    +1.650.843.4000                Tel:    +1.650.903.7069
4  Fax:   +1.650.843.4001                 Fax:    +1.650.352.3562

5  MORGAN, LEWIS & BOCKIUS LLP
   Jordan Mundell, Bar No. 324110
6  Jordan.mundell@morganlewis.com
   One Market, Spear Street Tower
7  San Francisco, CA  94105-1596
   Tel:    +1.415.442.1229
8  Fax:   +1.415.442.1001

9  Attorneys for Defendant
   LIXIONG CHEN, a/k/a John Chen
10

11             UNITED STATES DISTRICT COURT

12           NORTHERN DISTRICT OF CALIFORNIA

13                   OAKLAND DIVISION

14

15  UNITED STATES OF AMERICA,         Case No. CR-18-00450-JD

16             Plaintiff,              **DEFENDANT LIXIONG CHEN'S**
                                       **NOTICE OF MOTION AND MOTION TO**
17             v.                      **SUPPRESS PRE- AND POST-ARREST**
                                       **STATEMENTS**
18  LIXIONG CHEN,
                                       Pretrial Hearing:   March 25, 2019
19          a/k/a John Chen,           Time:         11:00 a.m.
                                       Court:        Hon. James Donato
20             Defendant.              Location:     SF Courtroom 11, 19th Fl.

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   BACKGROUND ................................................................................................ 4

    A.   HSI AGENTS EXECUTE AN ARREST WARRANT OF MR. CHEN
       AND SUBJECT HIM TO CUSTODIAL INTERROGATION.............................. 4

    B.   MR. CHEN UNEQUIVOCALLY INVOKES HIS RIGHT TO COUNSEL
       AND WAS PROVIDED AN INCOMPLETE AND MISLEADING
       ADVISEMENT OF RIGHTS ........................................................................ 5

    C.   MR. CHEN REPEATEDLY TOLD THE AGENTS THAT HE DID NOT
       WANT TO WAIVE HIS RIGHTS ................................................................ 6

    D.   MR. CHEN COULD NOT READ THE WAIVER FORM WITHOUT HIS
       GLASSES ..................................................................................................... 6

    E.   MR. CHEN'S MENTAL STATE AT THE TIME OF HIS ARREST AND
       DURING THE INTERROGATION UNDERMINED HIS ABILITY TO
       UNDERSTAND THE WAIVER AND MAKE VOLUNTARY
       STATEMENTS .............................................................................................. 7

III.  ANALYSIS .......................................................................................................... 8

    A.   THE QUESTIONING OF MR. CHEN WAS A CUSTODIAL
       INTERROGATION ...................................................................................... 9

    B.   MR. CHEN'S STATEMENTS MUST BE SUPPRESSED BECAUSE HE
       UNEQUIVOCALLY INVOKED HIS RIGHT TO COUNSEL.......................... 10

    C.   MR. CHEN'S STATEMENTS MUST BE SUPPRESSED BECAUSE HE
       DID NOT VOLUNTARILY, KNOWINGLY, AND INTELLIGENTLY
       WAIVE HIS MIRANDA RIGHTS ............................................................... 13

       1.   After Mr. Chen Repeatedly Said That He Did Not Understand The
          Waiver Or Why He Needed To Waive His Rights, The Government
          Failed To Clarify And Kept Asking Mr. Chen To Sign The Waiver........ 14

       2.   The Government's Failure To Advise Mr. Chen Of His Miranda
          Rights And The Consequences Of Waiver In Mandarin Precludes
          The Purported Waiver From Being Knowing and Intelligent.................. 17

       3.   The Government Cannot Cure Its Defective Miranda Warnings By
          Claiming That Mr. Chen Signed A Waiver Form Because Mr. Chen
          Could Not Read The Waiver Form ........................................................... 19

       4.   Mr. Chen Was Not In The Right State Of Mind To Understand The
          Nature Of His Miranda Rights And The Consequences Of
          Abandoning Them..................................................................................... 20

    D.   MR. CHEN'S STATEMENTS WERE INVOLUNTARY, THE
       PRODUCT OF COERCION AND NOT THE PRODUCT OF A FREE
       AND RATIONAL WILL............................................................................... 21

    E.   A SUPPRESSION HEARING IS NOT REQUIRED ON AN
       INVOCATION OF COUNSEL BUT IS REQUIRED TO RESOLVE
       OTHER CONTROVERTED FACTUAL ISSUES ........................................ 24

IV.   PRODUCTION OF STATEMENTS OF GOVERNMENT WITNESSES..................... 24

V.    CONCLUSION.................................................................................................. 25

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

DEFENDANT'S MOTION TO SUPPRESS
PRE- AND POST-ARREST STATEMENTS

i

CR 180450-JD

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Alvarez v. Gomez,*
   185 F.3d 995 (9th Cir. 1999) ................................................................. *passim*

*Berghuis v. Thompkins,*
   560 U.S. 370 (2010) ................................................................................ 10

*Brown v. Illinois,*
   422 U.S. 590 (1974) ................................................................................ 22

*Collazo v. Estelle,*
   940 F.2d 411 (9th Cir. 1991) ...................................................... 21, 22, 23

*Culombe v. Connecticut,*
   367 U.S. 568 (1961) ................................................................................ 22

*Davis v. United States,*
   512 U.S. 452 (1994) ................................................................................ 10

*Desire v. Attorney General of California,*
   969 F.2d 802 (9th Cir. 1992) .................................................................. 13

*Dickerson v. United States,*
   530 U.S. 428 (2000) ................................................................................ 21

*Lego v. Twomey,*
   404 U.S. 477 (1972) ................................................................................ 21

*Miller v. Fenton,*
   474 U.S. 104 (1985) ................................................................................ 22

*Miranda v. Arizona,*
   384 US. 436 (1966) ................................................................... *passim*

*Moran v. Burbine,*
   475 U.S. 412 (1986) .......................................................................... 13, 14

*North Carolina v. Butler,*
   441 U.S. 369 (1979) ................................................................................ 14

*Rhode Island v. Innis,*
   446 U.S. 291 (1980) .................................................................................. 9

*Robinson v. Borg,*
   918 F.2d 1387 (9th Cir. 1990) ................................................................ 11

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

DEFENDANT'S MOTION TO SUPPRESS
PRE- AND POST-ARREST STATEMENTS

ii

CASE NO. CR-18-00450-JD

*Rodriguez v. McDonald*,
  872 F.3d 908 (9th Cir. 2017) ..........................................................................................22

*Smith v. Endell*,
  860 F.2d 1528 (9th Cir. 1988) .....................................................................................10, 11

*Smith v. Illinois*,
  469 U.S. 91 (1984) ..........................................................................................................11

*Thompson v. Keohane*,
  516 US. 99 (1995) .............................................................................................................9

*United States v. Al-Saimari*,
  982 F. Supp. 2d 1285 (D. Utah 2013) .............................................................................16

*United States v. Amano*,
  229 F.3d 801 (9th Cir. 2000) ......................................................................................14, 17

*United States v. Batiste*,
  868 F.2d 1089 (9th Cir. 1989) .........................................................................................24

*United States v. Bernard S.*,
  795 F.2d 749 ...........................................................................................................13, 17, 19

*United States v. Binder*,
  769 F.2d 595 (9th Cir. 1985) ...........................................................................................14

*United States v. Booth*,
  669 F.2d 1231 (9th Cir. 1981) ...........................................................................................9

*United States v. Botello-Rosales*,
  728 F.3d 865 (9th Cir. 2013) ......................................................................................16, 18

*United States v. Crespo de Llano*,
  838 F.2d 1006 (9th. Cir. 1988) ........................................................................................22

*United States v. de la Jara*,
  973 F.2d 746 (9th Cir. 1992) .....................................................................................10, 11

*United States v. Gonzales*,
  749 F.2d 1329 (9th Cir. 1978) ....................................................................................17, 19

*United States v. Heldt*,
  745 F.2d 1275 (9th Cir. 1984) ...........................................................................................14

*United States v. Heredia-Fernandez*,
  756 F.2d 1412 (9th Cir. 1985), *cert. denied*, 474 U.S. 836 (1985) ...........................13, 19

*United States v. Howell*,
  231 F.3d 615 (9th Cir. 2000) ...........................................................................................24

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

*United States v. Martinez,*
    588 F.2d 1227 (9th Cir. 1978)......................................................................13, 17, 19

*United States v. Pinion,*
    800 F.2d 976 (9th Cir. 1986)....................................................................................21

*United States v. Preston,*
    751 F.3d 1008 (9th Cir. 2014)..................................................................................22

*United States v. Rodriguez,*
    518 F.3d 1072 (9th Cir. 2008)........................................................................ *passim*

*United States v. San Juan-Cruz,*
    314 F.3d 384 (9th Cir. 2002)....................................................................................18

*United States v. Wolf,*
    813 F.2d 970 (9th Cir. 1987)............................................................................20, 22

*Yarborough v. Alvarado,*
    541 US. 652 (2004).....................................................................................................9

S̲TATUTES̲

Jencks Act .......................................................................................................................24

O̲THER̲ A̲UTHORITIES̲

Fifth Amendment ................................................................................................ *passim*

Fed. R. Crim. P. 12(b)(3)(C) ............................................................................................1

Fed. R. Crim. P. 12(h). ...................................................................................................24

Fed. R. Crim. P. 26.2 ......................................................................................................24

M̲ORGAN̲, L̲EWIS̲ &
B̲OCKIUS̲ LLP
A̲TTORNEYS̲ A̲T̲ L̲AW̲
S̲ILICON̲ V̲ALLEY̲

DEFENDANT'S MOTION TO SUPPRESS
PRE- AND POST-ARREST STATEMENTS      iv      CASE NO. CR-18-00450-JD

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on March 25, 2019 at 11:00 a.m., or as soon thereafter as the matter may be heard, Defendant Lixiong Chen will and hereby does move the Court, pursuant to the Fifth Amendment of the Constitution and Rule 12(b)(3)(C) of the Federal Rules of Criminal Procedure, for an Order suppressing the pre- and post-arrest statements obtained on January 23, 2019 as involuntary and in violation of Mr. Chen's Miranda rights and as involuntary under the Fifth Amendment.

This motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, the complete files and records in this matter, oral argument of counsel, the accompanying Declarations, and such other and further matters as the Court may consider.

**ISSUES TO BE DECIDED**

(1) Whether Mr. Chen invoked his right to counsel, such that all questioning should have stopped and Mr. Chen should not have been subjected to any further questioning until he had consulted with a lawyer, based on established precedent.

(2) Whether the Miranda advisement was violated in other material respects by failing to warn Mr. Chen that any statements he makes can be used against him in a court of law.

(3) Whether Mr. Chen executed a voluntary, knowing, and intelligent waiver of his Miranda rights.

(4) Whether Mr. Chen's statements were involuntary as the product of law enforcement coercion and not the product of Mr. Chen's rational and free will.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

On January 21, 2019, at approximately 4:00 p.m., Mr. Chen departed Beijing for San Francisco on a delayed flight that arrived around noon PST, about 11 hours later.  Declaration of John Chen, ¶ 5.  Upon his arrival, Mr. Chen was exhausted from the long trip.  At the time, Mr. Chen did not know that the government, aware of his flight plans, had obtained a search warrant

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

DEFENDANT'S MOTION TO SUPPRESS
PRE- AND POST-ARREST STATEMENTS          1          CASE NO. CR-18-00450-JD

1   for his residence and business on January 18, 2019, and planned to execute the search warrant at

2   his residence at approximately 6:30 a.m.

3          On the morning of January 23, 2019, Mr. Chen was exhausted, sound asleep and

4   recovering from jetlag.  At approximately 6:30 am, he was suddenly awakened by his mother's

5   scream and a loud commotion.  Chen Decl., ¶ 7.  Mr. Chen feared the worst for his mother who

6   lives with him and suffers from high-blood pressure.  He immediately jumped out of bed and ran

7   downstairs where he was confronted by numerous Department of Homeland Security

8   Investigations ("HSI") agents who were present to execute a warrant for his arrest[1] and search his

9   residence.  The agents had drawn their guns and were pointing them directly at Mr. Chen.  *Id.* ¶ 8.

10  Mr. Chen has never been arrested or had a gun pointed at him before, and so naturally, he was

11  scared and frightened and feared for his life.  He was then subjected to custodial interrogation for

12  nearly two hours.[2]

13         In English and Mandarin, the agents took more than ten minutes to administer the Miranda

14  warnings.  Mr. Chen had many questions and repeatedly asked the agents about his rights.  His

15  questions were never fully or properly answered and only further compounded his confusion.  Mr.

16  Chen told the agents he certainly did not wish to waive his rights.

17         Normally, the advisement of Miranda rights takes about one minute or so with few

18  questions.  The agents provided a defective Miranda advisement, conditioned the answering of

19  Mr. Chen's questions until he signed a Miranda form he could not read without his glasses, and

20  failed to obtain a *voluntarily, knowingly, and intelligently* made waiver from Mr. Chen.  In

21  Mandarin, the agents redefined his Miranda rights in a defective manner and bungled the

22  advisement in other material respects.  In fact, the agents failed to warn Mr. Chen in a language

23  he could understand and in a form he could comprehend that his statements could be used against

24  him in a court of law.  That the agents failed to apprise Mr. Chen of his constitutionally protected

25  right is fatal and results in suppression on its own.

26

27

28

---

[1] The arrest warrant is provided in Declaration of Mark L. Krotoski ¶ 4, Ex. 3.
[2] A copy of the audio recording of the custodial interrogation has been separately provided to the Court.  Key passages are noted in this brief by the audio time of the recording.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

DEFENDANT'S MOTION TO SUPPRESS
PRE- AND POST-ARREST STATEMENTS              2              CASE NO. CR-18-00450-JD

1    More fundamental, and troubling, is that Mr. Chen *unequivocally* invoked his right to

2    counsel.  All questioning should have stopped.  But it didn't.  The agents asked Mr. Chen

3    approximately eight times after he invoked his right to counsel whether he would speak to the

4    agents and whether he would sign a waiver.  The agents were persistent in their efforts to entice

5    Mr. Chen to answer their questions after he asserted his right to counsel.  Under binding

6    precedent, the agents' conduct was impermissible and Mr. Chen's statements must be suppressed.

7    The Court's inquiry can end here.  Based on established case law, this, alone, is sufficient to

8    warrant suppression of Mr. Chen's subsequent, post-invocation statements.

9    Other independent grounds support suppression of Mr. Chen's statements.  In addition to

10   the agents' denial of Mr. Chen's invocation of his right to counsel and invalidly executed waiver,

11   Mr. Chen's statements were not the product of a free and rational will, but rather, the product of

12   coercion.  As confirmed by the audio recording and an examination of the circumstances leading

13   up to, and including, the interrogation, Mr. Chen's statements were not statements made by a

14   rational or informed intellect, but of a person with significant language difficulties, an

15   inexperience of the criminal justice system, and an ignorance of the repercussions of making

16   statements to the agents in the absence of counsel.  Mr. Chen's statements were the product of

17   police coercion, improper questioning tactics, and false representations that resulted in an

18   overbearing of his free will.  The confusion in the agent's questions and the answers that were

19   given was based in part on the use of different languages and dialects and the inaccurate

20   advisement of rights provided by the agents.  Mr. Chen repeatedly told the agents he was cold, yet

21   they did not address his concerns.  The confusion and misinformation is apparent based on a

22   cursory review of the audio recording of the custodial interrogation.

23   This Motion is therefore brought to suppress Mr. Chen's pre- and post-arrest statements

24   on the basis that they were improperly made in violation of his Miranda and Fifth Amendment

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

DEFENDANT'S MOTION TO SUPPRESS
PRE- AND POST-ARREST STATEMENTS          3          CASE NO. CR-18-00450-JD

1  rights.[3]  The suppression motion can be granted on the clear record, particularly based on

2  established precedent criticizing police questioning following a suspect's invocation of his right

3  to counsel.  But if the Court considers other grounds raised in this motion, a suppression hearing

4  will be required to resolve controverted facts and understand the circumstances of Mr. Chen's

5  custodial interrogation.  In particular, the suppression hearing will be necessary to resolve

6  material issues concerning the totality of the circumstances in which the involuntary statements

7  were obtained and whether Mr. Chen was properly advised of his Miranda rights, as set forth

8  below.

9  **II.     BACKGROUND**

10      **A.     HSI AGENTS EXECUTE AN ARREST WARRANT OF MR. CHEN AND
               SUBJECT HIM TO CUSTODIAL INTERROGATION**

11

12      On January 23, 2019, at approximately 6:30 a.m., HSI agents entered Mr. Chen's home at

13  5648 Forbes Drive, Newark, California 94560 to execute an arrest warrant.  Chen Decl. ¶¶ 8, 10,

14  19.  The agents told Mr. Chen he was under arrest and showed him the arrest warrant.  Chen Decl.

15  ¶ 19.  The agents then interrogated Mr. Chen in his home for approximately two hours.  Chen

16  Decl. ¶ 28; Declaration of Mark. L. Krotoski, ¶ 3, Ex. 1.  At least four different agents

17  interrogated Mr. Chen, though there were at least twenty agents present conducting a search of his

18  residence.  *Id.*, ¶ 10.  These agents were all carrying weapons.  *Id.*, at ¶ 8.  Mr. Chen had no idea

19  why so many agents were inside his home or why he was under arrest.  Chen Decl. ¶ 10.

20      At the outset of his custodial interrogation, HSI agents informed Mr. Chen that they would

21  read him his Miranda warnings in English and provide him a written version in Mandarin,[4] to

22  which Mr. Chen responded, "It's weird, what's that mean?"  Krotoski Decl. ¶ 3, Ex. 1 (at

23  0:00:43); *id.*, ¶ 4, Ex. 2 at p. 1 (Excerpt 1).[5]  The agent then proceeded to read Mr. Chen his

24

25  [3] It is unclear, given the limited discovery produced by the Government at this juncture, whether Mr. Chen made any pre-arrest statements to officers on January 23, 2019.  The audio recording begins with an agent asking Mr. Chen,
26  "Do you understand those characters?" which suggests that the initial exchanges or statements may not have been recorded.  To the extent Mr. Chen made statements prior to the beginning of the audio recording, this Motion also
27  seeks to suppress those statements.
   [4] Mr. Chen's counsel has requested a copy of the written Miranda advisement which has yet to be provided in discovery.
28  [5] The time on the audio recording is provided so the cited passages may be found.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

DEFENDANT'S MOTION TO SUPPRESS
PRE- AND POST-ARREST STATEMENTS          4          CASE NO. CR-18-00450-JD

1    rights—in English—and asked whether Mr. Chen understood, to which he responded "uh huh."

2    Krotoski Decl. ¶ 3, Ex. 1 (at 0:01:16).  Though Mr. Chen responded to the agent's questions with

3    a noncommittal, "uh huh," he did not understand what the agent said to him.  Chen Decl. ¶ 11.

4    For Mr. Chen, the response, "uh huh," was an acknowledgement, not a statement, that he

5    understood the question.  *Id.*  Mr. Chen did not understand the English advisements and thus

6    sought clarification in Mandarin.  *Id.*

7          **B.**    **MR. CHEN UNEQUIVOCALLY INVOKES HIS RIGHT TO COUNSEL
8    AND WAS PROVIDED AN INCOMPLETE AND MISLEADING
     ADVISEMENT OF RIGHTS**

9          Two agents proceeded to advise Mr. Chen of his Miranda rights in Mandarin.  Krotoski

10   Decl. ¶ 3, Ex. 1 (at 0:03:15, 0:05:37).  Though, the explanations provided only led to more

11   confusion.  *Id.*, ¶ 3, Ex. 1 (at 0:05:15, 0:07:52).  The agents failed in one critical respect when

12   advising Mr. Chen of his right to counsel:

13        SA Huang:    Right, your rights mean, before you talk about anything, you can
14                   find a lawyer, you can ask for a lawyer to be present. But if now
                     you feel that you are willing to explain things to him, it represents
15                   that you waive your rights to ask for a lawyer to be present.

16        Mr. Chen:    Oh, then for sure, I need a lawyer.

17        *Id.*, ¶ 3, Ex. 1 (at 0:05:57); *id.*, ¶ 4, Ex. 2 at p. 4 (Excerpt 4).  Mr. Chen's statement, "Oh,

18   then for sure, I need a lawyer," is an invocation of his right to counsel.  He believed this statement

19   to be sufficient to invoke his constitutionally protected right.  Chen Decl. ¶ 16.  Yet crucially, the

20   questioning did not stop, and Mr. Chen was not afforded this protection.  Instead, Special Agent

21   Huang responded, "So now you are not willing to talk to him. When he asks you a question, you

22   are not willing to talk to him."  Krotoski Decl. ¶ 3, Ex. 1 (at 0:06:20).  Special Agent Huang

23   asked Mr. Chen approximately 8 times after he had invoked his right to counsel whether he would

24   speak to the agents or whether he would sign a waiver.  *See, e.g., id.*, ¶ 3, Ex. 1 (at 0:06:30,

25   0:08:53, 0:09:02).  At no point did the agents respect Mr. Chen's invocation and make

26   arrangements for him to speak with counsel.

27         Additionally, the agents provided an incomplete and misleading advisement of rights in

28   Mandarin when they failed to warn Mr. Chen that anything he says can be used against him in a

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

1  court of law.  Chen Decl. ¶ 27.  As a result, the agents failed to apprise Mr. Chen of his

2  constitutionally protected privilege against self-incrimination.  *Id.*, ¶ 27.  Mr. Chen did not know

3  that the statements he made to the agents could be used against him in court.  *Id.*

### C.  MR. CHEN REPEATEDLY TOLD THE AGENTS THAT HE DID NOT WANT TO WAIVE HIS RIGHTS

6  The agents took approximately ten minutes to advise Mr. Chen of his Miranda rights.

7  Krotoski Decl. ¶ 3, Ex. 1.  On two separate occasions when the agents asked Mr. Chen whether

8  he would waive his rights, Mr. Chen responded, "Certainly not. I have taken my right… Uh huh, I

9  got to taken my right. So what do you mean, just like 'do you waive your right?'" and "Yes, don't

10  waive."  *Id.*, ¶ 3, Ex. 1 (at 0:02:41, 0:04:13); *id.*, ¶ 4, Ex. 2 at pp. 1, 3 (Excerpts 1 and 3).

11  Mr. Chen expressed his confusion and lack of understanding when he repeatedly asked,

12  "Why did they say, 'you need to waive your rights?'" *Id.*, ¶ 3, Ex. 1 (at 0:03:07, 0:03:52,

13  0:04:33).  During Mr. Chen's 7-minute exchange in Mandarin with the agents, Mr. Chen asked

14  the agents over 20 times to clarify the nature of his rights, the reasons for his arrest, the meaning

15  of "waiver," and the consequences of waiving his rights.  *Id.*, ¶ 3, Ex. 1 (at 0:03:07 – 0:10:14).

16  But rather than address any of Mr. Chen's questions, the agents told him that if he wanted an

17  explanation, he needed to answer their questions.  *Id.*, ¶ 3, Ex. 1 (at 0:03:45) ("Are you willing to

18  answer our question?").  But that if he wanted to answer their questions, he would first need to

19  sign a waiver.  *Id.*, ¶ 3, Ex. 1 (at 0:03:48) ("If you are willing to answer our questions, you need

20  to sign.").  The closest Mr. Chen came to receiving an explanation was when Special Agent

21  Huang told him that "waiving your rights means that you are willing to talk to us.  We ask you

22  questions, and you are willing to answer." *Id.*, ¶ 3, Ex. 1 (at 0:05:48).  In this way, the agents

23  conditioned the answering of Mr. Chen's questions on signing a Miranda form.  In fact, the agents

24  continued pressing Mr. Chen to waive his rights.  *See, e.g., id.*, ¶ 3, Ex. 1 (at 0:06:29).

### D.  MR. CHEN COULD NOT READ THE WAIVER FORM WITHOUT HIS GLASSES

27  For many years, Mr. Chen has required glasses to read and write.  Chen Decl. ¶ 4.

28  Without his glasses, he cannot see or read clearly.  *Id.*  When HSI agents arrested Mr. Chen, he

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

DEFENDANT'S MOTION TO SUPPRESS
PRE- AND POST-ARREST STATEMENTS                6                CASE NO. CR-18-00450-JD

was not wearing his glasses.  *Id.* ¶ 26.  When HSI agents provided Mr. Chen with a written

waiver form at approximately ten minutes into the interrogation, he was still not wearing his

glasses.  *Id.*, ¶ 25.  As a result, Mr. Chen could not read the waiver form, let alone understand the

Miranda warnings printed on the form.  *Id.*  He made this much clear to Special Agent Huang

approximately eighteen minutes into the custodial interrogation:

> Mr. Chen:        My glasses still up there [upstairs] ….
>
> SA Huang:       Let me tell you, you don't need to wear glasses, later.
>
> Mr. Chen:        I cannot see clearly without glasses.
>
> SA Huang:       Can you see this clearly?
>
> Mr. Chen:        This is blurry.

Krotoski Decl. ¶ 3, Ex. 1 (at 0:18:37-0:18:48); *id.*, ¶ 4, Ex. 2 at p. 4-5 (Excerpt 5).  When

Mr. Chen indicated he could not read without his glasses, Special Agent Huang immediately

responded, "you don't need to wear glasses, later."  Without his glasses, Mr. Chen was therefore

not able to read the waiver form.  Chen Decl. ¶ 25.

The agents were clearly not concerned about his inability to read.  When Mr. Chen said,

"This is blurry," the agents should have called into question whether he was able to read the

waiver form that Special Agent Huang directed him to sign in order to get answers to his

questions**.**  To everyone in the room, it should have been obvious that the writing appeared blurry

to Mr. Chen and that he could not read and understand the written Miranda waiver form.  Yet

despite the agents later retrieving Mr. Chen's glasses, they did not have him read the waiver form.

They persisted in their questioning of Mr. Chen, aware that he could not read without his glasses.

Mr. Chen never read the waiver form while wearing his glasses.  *Id.*

### E.   MR. CHEN'S MENTAL STATE AT THE TIME OF HIS ARREST AND DURING THE INTERROGATION UNDERMINED HIS ABILITY TO UNDERSTAND THE WAIVER AND MAKE VOLUNTARY STATEMENTS

Throughout the Miranda process, and as well as the remaining custodial interrogation, Mr.

Chen was disorientated, confused, and in a state of bewilderment.  *Id.* ¶¶ 7, 11, 15, 24.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

DEFENDANT'S MOTION TO SUPPRESS
PRE- AND POST-ARREST STATEMENTS                    7                    CASE NO. CR-18-00450-JD

1    Paramount, was his concern for his mother, who was suffering with health issues.  *Id.*, ¶¶ 7-8, 29.

2    He did not know why so many agents were inside his home, and why he was under arrest.  *Id.*, ¶

3    10.  He did not understand his Miranda rights, and what it meant to waive those rights.  *Id.*, ¶ 15.

4    He wanted answers, but the agents told him repeatedly that he would only receive an explanation

5    if he signed a waiver of his rights.  Krotoski Decl. ¶ 3, Ex. 1 (at 0:05:48).  In this way, the agents

6    conditioned Mr. Chen's requests for information on the waiver of his Miranda rights to the extent

7    that he did not feel that he had any option other than to sign the waiver.  Chen Decl. ¶ 24.  Mr.

8    Chen summarized his state of helplessness perfectly when he said to Special Agent Huang, "I

9    don't know what it means, I still don't know what the charges are, I still don't know anything by

10   now."  Krotoski Decl. ¶ 3, Ex. 1 (at 0:07:52).  Though, after ten minutes of back-and-forth

11   questions and misinformation by the agents, Mr. Chen finally succumbed to the conditioning and

12   pressures.  He told Special Agent Huang that he wanted to answer the agents' questions and

13   Special Agent Huang handed Mr. Chen the waiver form, telling him, "Write down here 'yes' to

14   'do you understand your rights'… and then 'do you waiver your rights,' you need to say 'yes.'"

15   *Id.*, ¶ 3, Ex. 1 (at 0:10:00).  Mr. Chen did what Special Agent Huang told him to do.  Chen Decl. ¶

16   24.  Though, he did not sign the waiver because he understood the *meaning* or the *consequences*

17   of waiver, Mr. Chen signed it for an explanation of his arrest.  *Id.*

18        Accordingly, Mr. Chen did not validly waive his Miranda rights.  He was not fully

19   advised of his rights in a language and form he understood, and was denied his constitutional

20   right to counsel.  For the reasons that follow, Mr. Chen's statements must be suppressed.

21   **III.    ANALYSIS**

22        A suspect's privilege against self-incrimination is protected by the Fifth Amendment.

23   For the government to satisfy its heavy burden to establish that Mr. Chen's statements should not

24   be suppressed, it must show that (i) Mr. Chen did not invoke his right to counsel, (ii) after being

25   advised of his Miranda rights in a manner, form, and language that Mr. Chen could understand,

26   Mr. Chen made a voluntary, knowing, and intelligent waiver of his rights, and (iii) Mr. Chen's

27   subsequent statements were voluntarily made.  A failure by the government to show any one of

28   these elements necessitates the finding that Mr. Chen's statements be suppressed.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

DEFENDANT'S MOTION TO SUPPRESS
PRE- AND POST-ARREST STATEMENTS                8                CASE NO. CR-18-00450-JD

1

**A.     THE QUESTIONING OF MR. CHEN WAS A CUSTODIAL
        INTERROGATION**

2

3      The government must read a person his Miranda rights if he is to be subjected to custodial

4   interrogation. *Miranda v. Arizona*, 384 US. 436, 467 (1966).  "Custodial interrogation" means

5   "questioning initiated by law enforcement officers after a person has been taken into custody or

6   otherwise deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 444.

7   Courts determine a suspect's custodial status "based on how a reasonable person in the suspect's

8   situation would perceive his circumstances." *Yarborough v. Alvarado*, 541 US. 652, 663 (2004).

9   The custody test focuses on whether "a reasonable person [would] have felt he or she was not at

10  liberty to terminate the interrogation and leave." *Thompson v. Keohane*, 516 US. 99, 112 (1995).

11  Often this inquiry will be resolved by a "formal arrest or restraint on [the] freedom of movement

12  of the degree associated with a formal test." *Id.*  After resolving this inquiry, the next step is to

13  determine whether the suspect in custody was subjected to interrogation.  "The Miranda

14  safeguards come into play whenever a person in custody is subjected to either express questioning

15  or its functional equivalent." *Rhode Island v. Innis*, 446 U.S. 291, 300-301 (1980).

16  "Interrogation… include[s] any statements or actions that the police should know are reasonably

17  likely to elicit an incriminating response from the suspect." *United States v. Booth*, 669 F.2d

18  1231, 1237 (9th Cir. 1981) (citing *Rhode Island*, 446 U.S. at 300-301).

19      Here, following a lengthy investigation spanning over five years, the government applied

20  for, and received, an arrest warrant for Mr. Chen.  The HSI agents subsequently executed the

21  arrest warrant at Mr. Chen's home.  "After making entry into [Mr. Chen's] residence… [Mr.]

22  Chen was informed that there was a warrant for his arrest" and "[o]n January 23, 2019, at 0726

23  hours, Lixiong Chen was read his Miranda rights."  Krotoski Decl. ¶ 3, Ex. 1 (at 0:06:53) ("Let

24  me tell you now, you will be arrested for sure today.  This is your arrest warrant.").  Mr. Chen

25  was clearly in 'custody' as he was "not at liberty to terminate the interrogation or leave."

26  *Thompson*, 516 U.S. 99 at 112.

27      After Mr. Chen was arrested, the HSI agents began questioning Mr. Chen about issues

28  related to the charged Counts.  The questioning was designed to elicit incriminating responses

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

DEFENDANT'S MOTION TO SUPPRESS
PRE- AND POST-ARREST STATEMENTS                    9                    CASE NO. CR-18-00450-JD

1    from Mr. Chen, as evidenced by the nature of the questions posed.  Krotoski Decl. ¶ 3, Ex. 1 (at

2    0:28:30) ("Who's the decision maker for the company?"); *id.* , ¶ 3, Ex. 1 (at 0:43:05) ("Questions

3    we're asking you, we know the answers to but we need your cooperation.") *id.*, ¶ 3, Ex. 1 (at

4    0:50:53) ("Who transfers all the money to China that we've been looking at?  It's like millions of

5    dollars, okay.").  The structuring of the questioning and the tactics employed by the HSI

6    agents—namely, repeatedly telling John that "we'd like to say [to the prosecutor] that you

7    cooperated" and "that could make a big difference down the road"—is also strongly suggestive of

8    the agents' intentions to elicit incriminating responses from Mr. Chen.  *See, e.g, id.,* ¶ 3, Ex. 1 (at

9    0:43:05, 1:33:34, 1:44:30, 1:44:36, 1:46:46, 1:51:55).  This line of questioning indicates that the

10   agents expected answers that would incriminate Mr. Chen.

11        Because the HSI agents engaged in a custodial interrogation of Mr. Chen, he was entitled

12   to receive, in advance of the interrogation, the appropriate Miranda warnings regarding his rights

13   under the Fifth Amendment to the Constitution.

14        **B.    MR. CHEN'S STATEMENTS MUST BE SUPPRESSED BECAUSE HE
15              UNEQUIVOCALLY INVOKED HIS RIGHT TO COUNSEL**

16        "The *Miranda* Court formulated a warning that must be given to suspects before they can

17   be subjected to custodial interrogation."  *Berghuis v. Thompkins*, 560 U.S. 370, 380 (2010).  A

18   suspect, after being so advised, may choose to either invoke or waive his rights.  "If a suspect

19   requests counsel at any time during the interview, he is not subject to further questioning until a

20   lawyer has been made available or the suspect himself reinitiates conversation."  *Davis v. U.S.*,

21   512 U.S. 452, 458 (1994).  "Invocation of the *Miranda* right to counsel 'requires, at a minimum,

22   some statement that can reasonably be construed to be an expression of a desire for the assistance

23   of an attorney.'"  *Davis*, 512 U.S. at 459; *see also United States v. de la Jara*, 973 F.2d 746, 750

24   (9th Cir. 1992) (noting that a suspect's words must be taken as "ordinary people would

25   understand them").  Further, "waiver cannot be found from a suspect's continued response to

26   questions, even if he is again advised of his rights." *Smith v. Endell*, 860 F.2d 1528, 1529 (9th

27   Cir. 1988) (citing *Edwards v. U.S.*, 451 U.S. 477, 484-85 (1981)).  Where a suspect invokes his

28   right to counsel, that right must be "scrupulously honored."  *Miranda*, 384 U.S. at 479.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

DEFENDANT'S MOTION TO SUPPRESS
PRE- AND POST-ARREST STATEMENTS                  10                         CASE NO. CR-18-00450-JD

1    Here, after Special Agent Huang advised Mr. Chen of his right to counsel, Mr. Chen

2   *immediately* and *unequivocally* invoked that right. The questioning should have stopped there, but

3   it didn't.  The following exchange between Special Agent Huang and Mr. Chen is illustrative:

|   |   |
|---|---|
| SA Huang: | Right, your rights means, before you talk about anything, you can find a lawyer, you can ask for a lawyer to be present. But if now you feel that you are willing to explain things to him, it represents that you waive your rights to ask for a lawyer to be present. |
| **Mr. Chen:** | **Oh, then for sure, I need a lawyer.** |
| SA Huang: | So you are not willing to talk to him? When he asks you a question, you are not willing to talk to him?<br>… |
| SA Huang: | You can ask for a lawyer. You still have the right to ask for a lawyer. |
| Mr. Chen: | I can still ask for a lawyer? |
| SA Huang: | Yes, he will take you to the court, the judge will ask, 'do you want a lawyer, or do you want them to assign a lawyer to you.' |
| Mr. Chen: | I just want to know, now, I just want to ask what the issue is, right here, they can ask me, like this. |

14    Krotoski Decl. ¶ 3, Ex. 1 (at 0:05:57, 0:09:18) (emphasis added); *id.*, ¶ 4, Ex. 2 at p. 4

15   (Excerpt 4).  The above exchange demonstrates that Mr. Chen made the requisite "expression of a

16   desire" for the assistance of counsel when he said: "Oh, then for sure, I need a lawyer."  Such

17   expression qualifies as an unequivocal invocation of his right to counsel.  *See Smith v. Illinois*,

18   469 U.S. 91, 97 (1984) (deeming a suspect's statement, "Uh, yeah, I'd like to do that," upon

19   hearing of his right to counsel a clear invocation); *de la Jara*, 973 F.2d at 750 (deeming, "Can I

20   call my attorney?" or "I should call my lawyer," a clear invocation of the right to counsel);

21   *Robinson v. Borg*, 918 F.2d 1387, 1389 (9th Cir. 1990) (deeming, "I have to get me a good

22   lawyer, man. Can I make a phone call?" a clear invocation of the right to counsel); *Smith*, 860

23   F.2d at 1529-31 (deeming "Can I talk to a lawyer?" a clear invocation of the right to counsel).

24    On this point, *Alvarez v. Gomez* is dispositive.  185 F.3d 995 (9th Cir. 1999).  In *Alvarez*,

25   the Ninth Circuit considered whether the trial court erred by admitting the defendant's statements

26   because he had invoked his right to counsel at the beginning of the interrogation.  *Alvarez*, 185

27   F.3d at 997.  Because *Alvarez* squarely addresses the issue, the relevant exchange between the

28   defendant and the officers is set out below:

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

DEFENDANT'S MOTION TO SUPPRESS
PRE- AND POST-ARREST STATEMENTS                          11                          CASE NO. CR-18-00450-JD

| | | |
|---|---|---|
| Officer 1: | Okay. Do you want to give up the right to remain silent? Mario, you wanna talk about this incident? |
| Alvarez: | Can I get an attorney right now, man? |
| Officer 1: | Pardon me? |
| Alvarez: | You can have attorney right now? |
| Officer 1: | Ah, you can have one appointed for you, yes. |
| Alvarez: | Well, like right now you got one? |
| Officer 1: | We don't have one here, no. There's not one present now. |
| Officer 2: | There will be one appointed to you at the arraignment, ah, whether you can afford one. If you can't one will be appointed to you by the court. |
| Alvarez: | All right. |
| Officer 1: | (says something unintelligible) |
| Alvarez: | I'll - I'll talk to you guys. |
| Officer 1: | Okay. You wanna talk to us without a lawyer here, right? |
| Alvarez: | Yeah. |

*Id.*, at 996-97.  The Ninth Circuit, in reversing Alvarez's conviction, found that Alvarez had made the requisite "expression of a desire" for the help of a lawyer. *Id.*, at 998.  As a result, "the police should have discontinued the interview at that point and not subjected Alvarez to any further questioning until after he had had an opportunity to consult with a lawyer or until he, on his own initiative, resumed the conversation." *Id.*  The court rejected the theory that Alvarez "was merely asking clarifying questions regarding his right to counsel" and found the defendant's waiver to be invalid. *Id.*  Accordingly, the statements should have been suppressed "[b]ecause Alvarez's subsequent Miranda waivers in the recorded interviews were in response to further police initiated questioning… [and] are without effect." *Id.*

*Alvarez* compels suppression.  Just like in *Alvarez*, Mr. Chen invoked his right to counsel when the agents asked him if he was willing to talk to them.  Just like in *Alvarez*, the agents told Mr. Chen that an attorney was not presently available, but would be appointed by the court at a later time.  Then, just like in *Alvarez*, Mr. Chen waived his Miranda rights in response to further police questioning.

Mr. Chen's exchange with Special Agent Huang demonstrates that he had unequivocally requested the assistance of counsel.  The questioning should have discontinued at that point and Mr. Chen should not have been subjected to any further questioning until he had consulted with a lawyer.  It does not matter that Mr. Chen continued responding to the agents' statements, because

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

DEFENDANT'S MOTION TO SUPPRESS
PRE- AND POST-ARREST STATEMENTS

12

CASE NO. CR-18-00450-JD

1   a valid waiver "cannot be established by showing only that [the accused] responded to further

2   police-initiated custodial interrogation." *Id.* (citing *Edwards*, 451 U.S. at 484); *see also Desire v.*

3   *Attorney General of California*, 969 F.2d 802, 805 (9th Cir. 1992) (defendant's "unhonored

4   request for counsel vitiates his subsequent decision to talk without counsel's presence.").

5          The agents were required to "scrupulously honor" Mr. Chen's right to counsel and cease

6   all further questioning until Mr. Chen had been given the opportunity to consult with counsel.

7   *Miranda*, 384 U.S. at 479.  Because the government failed to do so, the Court's inquiry can end

8   here.  Mr. Chen's statements must be suppressed.

9   C.    **MR. CHEN'S STATEMENTS MUST BE SUPPRESSED BECAUSE HE DID
          NOT VOLUNTARILY, KNOWINGLY, AND INTELLIGENTLY WAIVE
10         HIS MIRANDA RIGHTS**

11         Even if the Court finds that Mr. Chen did not invoke his right to counsel, Mr. Chen's

12  statements must still be suppressed because he did not voluntarily, knowingly, and intelligently

13  waive his Miranda rights.  A suspect subject to custodial interrogation, after being advised of his

14  rights under the Fifth Amendment, may choose to waive those rights.  *Miranda*, 384 U.S. at 436.

15  "To be valid, a waiver of Miranda rights must be *voluntarily, knowingly,* and *intelligently* made."

16  *United States v. Bernard S.*, 795 F.2d 749, 751 (citing *Miranda*, 384 U.S. at 444 (emphasis

17  added)).  The focus is on whether the defendant acted with a "full awareness of both the nature of

18  the right being abandoned and the consequences of the decision to abandon it."  *Moran v.*

19  *Burbine*, 475 U.S. 412, 421 (1986).  A valid waiver of Miranda rights depends on the totality of

20  the circumstances, including the background, experience and conduct of the defendant."  *Bernard*

21  *S.*, 795 F.2d at 751 (citing *North Carolina v. Butler*, 441 U.S. 369, 374-75 (1979)).

22         In a case involving a foreign national, the court must also consider any language

23  difficulties encountered by the defendant.  *See United States v. Heredia-Fernandez*, 756 F.2d

24  1412, 1415 (9th Cir. 1985), *cert. denied*, 474 U.S. 836 (1985); *see also United States v. Martinez*,

25  588 F.2d 1227, 1235 (9th Cir. 1978) (assuming "without so holding that if Miranda warnings are

26  given in a language which the person being so instructed does not understand, a waiver of those

27  rights would not be valid.").  The court must also assess voluntariness by examining "whether the

28  advice of rights was in the defendant's native language, whether the defendant appeared to

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

1    understand those rights, whether the defendant had the assistance of a translator, whether the

2    defendant's rights were explained painstakingly, and whether the defendant had experience with

3    the American criminal justice system." *United States v. Amano*, 229 F.3d 801, 804-05 (9th Cir.

4    2000).

5         There is a presumption against waiver, and the burden of showing a valid waiver is on the

6    government under a preponderance of the evidence standard.  *Butler*, 441 U.S. at 373; *United*

7    *States v. Binder*, 769 F.2d 595, 599 (9th Cir. 1985).  The government's burden to make such a

8    showing "is great," and the court will "indulge every reasonable presumption against waiver of

9    fundamental constitutional rights."  *United States v. Heldt*, 745 F.2d 1275, 1277 (9th Cir. 1984)

10   (citing *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)).

11        When viewed under the totality of the circumstances, Mr. Chen did not voluntarily,

12   knowingly, and intelligently waive his Miranda rights.  That the entire waiver process took

13   approximately ten minutes—that is, ten minutes for the government to read Mr. Chen his *four*

14   Miranda rights and extract a waiver—is telling.  A review of the audio recording demonstrates

15   clearly that, despite waiver, he did not *understand* the nature of the rights being abandoned and

16   the *consequences* of the decision to abandon those rights.  *See Moran*, 475 U.S. at 421.  In

17   particular, Mr. Chen repeatedly sought clarification from the agents as to the meaning of

18   "waiver," Mr. Chen's language difficulties impeded his ability to understand the English

19   recitation of his Miranda rights and Special Agent Huang bungled the Mandarin recitation, Mr.

20   Chen could not read the written waiver form because he was not wearing his glasses, and Mr.

21   Chen's mental state at the time of waiver impacted on his ability to understand its meaning.

22        Under a totality of the circumstances approach, Mr. Chen did not voluntarily, knowingly,

23   and intelligently waive his rights.

24        1.    After Mr. Chen Repeatedly Said That He Did Not Understand The Waiver
               Or Why He Needed To Waive His Rights, The Government Failed To
25             Clarify And Kept Asking Mr. Chen To Sign The Waiver

26        The government's duty to obtain an unequivocal waiver requires it to clarify any

27   ambiguities in the suspect's understanding of the waiver prior to interrogating the suspect.  *See*

28   *United States v. Rodriguez*, 518 F.3d 1072, 1080 (9th Cir. 2008).  "Prior to obtaining an

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

DEFENDANT'S MOTION TO SUPPRESS
PRE- AND POST-ARREST STATEMENTS          14          CASE NO. CR-18-00450-JD

1   unambiguous and unequivocal waiver, a duty rests with the interrogating officer to clarify any

2   ambiguity before beginning general interrogation… [T]he government cannot meet its 'heavy

3   burden' of proving an initial knowing and intelligent waiver of Miranda with an ambiguous or

4   equivocal reference to *Miranda* rights." *Rodriguez*, 518 F.3d at 1080.

5          Mr. Chen did not understand the English recitation of the Miranda warnings.  When Mr.

6   Chen sought clarification from the Mandarin-speaking Agents, the Miranda warnings provided to

7   him were (a) incomplete, and (b) orally explained and redefined in Mandarin in a substantially

8   different form to the way in which the warnings were given both orally in English and written on

9   the waiver form.  *See* Krotoski Decl. ¶ 3, Ex. 1 (at 0:00:17, 0:05:57); Chen Decl. ¶ 27.  When the

10  agents asked Mr. Chen whether he waived his rights, Mr. Chen affirmatively responded:

11  "Certainly not.  I have taken my rights."  Krotoski Decl. ¶ 3, Ex. 1 (at 0:02:41).  He is then

12  repeatedly heard asking the agents why he needs to waive his rights.  *See, e.g., id.*, ¶ 3, Ex. 1 (at

13  0:02:45) ("What do you mean, just like 'do you waive your right?'"); *id.*, ¶ 3, Ex. 1 (at 0:03:07)

14  ("Ah, why did he say that you need to waive your rights?"); *id.*, ¶ 3, Ex. 1 (at 0:03:52) ("Why did

15  they say, you need to waive your rights?"); *id.*, ¶ 3, Ex. 1 (at 0:04:33) ("I just don't understand, I

16  am OK with other things, but just this – why it says you need to waive your rights?"); *id.*, ¶ 3, Ex.

17  1 (at 0:07:52) ("So, I don't know what it means [referring to waiver], I still don't know what the

18  charges are, I still don't know anything by now.").  There is clear ambiguity present here.  On this

19  point, *Rodriguez* is dispositive.

20          In *Rodriguez*, the Ninth Circuit made clear that, in an initial-waiver scenario, interrogating

21  officers must clarify ambiguous responses to Miranda warnings.  *Rodriguez*, 518 F.3d at 1074.

22  There, the defendant was asked whether he waived his Miranda rights, to which he responded,

23  "I'm good for tonight." *Id.*, at 1075.  The court found this statement to be ambiguous and not

24  sufficient to amount to an unequivocal waiver of his Miranda rights.  *Id.*, at 1080.  "Because

25  [defendant's] statement in response to the *Miranda* warning was ambiguous, and because his

26  interrogator failed to clarify [defendant's] wishes with respect to his Miranda warnings," the

27  defendant did not voluntarily, knowingly, and intelligently waive his Miranda rights.  *Id.*, at 1081.

28  The court subsequently reversed the defendant's conviction, noting that "[i]f it is not

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

DEFENDANT'S MOTION TO SUPPRESS
PRE- AND POST-ARREST STATEMENTS                    15                    CASE NO. CR-18-00450-JD

1    unreasonable to ask a police officer to administer the warning, it is also not unreasonable to ask

2    him to get an unequivocal waiver before commencing general interrogation." *Id*. at 1079 n.7.

3         Other courts have also held that government agents must clarify a defendant's rights

4    where the explanation of the rights was confusing or where the defendant asked a question about

5    the rights.  In *United States v. Al-Saimari*, 982 F. Supp. 2d 1285 (D. Utah 2013), for example,

6    agents advised the defendant of his rights and asked whether he wanted to talk.  The defendant

7    said "I don't know, you know. I'm just surprised, you know." *Id*., at 1287.  The agent then

8    reiterated that he needed a "yes or a no" answer." *Id*.  That follow-up response, according to the

9    district court, was insufficient, rendering the Miranda warnings invalid. *Id*., at 1290–91.  And in

10   considering the implications of its decision, the court reasoned that "the Fifth Amendment merely

11   demands that an officer ask follow-up questions as necessary to establish a knowing and

12   voluntary waiver when, as was the case with Mr. Al–Saimari, a suspect expresses or manifests

13   confusion, or fails to state affirmatively that he understands the *Miranda* warnings." *Id*., at 1292;

14   *see also United States v. Botello-Rosales*, 728 F.3d 865, 867 (9th Cir. 2013) ("That officers had

15   previously administered correct *Miranda* warnings in English to [the defendant] does not cure the

16   constitutional infirmity [in the defective warnings].").

17        Mr. Chen's situation is analogous to *Rodriguez* and *Al-Saimari* and the reasoning from

18   those cases yields the same conclusion here.  Just like in those cases, Mr. Chen's responses to the

19   agent's recitation of his Miranda warnings were ambiguous and *clearly* established his lack of

20   understanding of "waiver."  As a result, the government had an affirmative duty to clarify Mr.

21   Chen's ambiguities and explain the meaning and consequences of waiver.  But the agents did not

22   do so.  Instead, they avoided his queries and repeatedly challenged his decision to cooperate: "So

23   now you are not willing to talk to him? When he asks you a question, you are not willing to talk

24   to him?"  Krotoski Decl. ¶ 3, Ex. 1 (at 0:06:20).  Mr. Chen did all he could to understand his

25   rights by repeatedly asking for clarification, yet the agents failed in their duty to clear up his

26   uncertainties.  As a result of the agent's failure, Mr. Chen could not, and *did not*, execute a

27   voluntary, knowing, and intelligent waiver.  In fact, Mr. Chen has sworn that he did not

28   understand what it meant to waive his rights and the consequences of doing so.  Chen Decl. ¶¶ 15,

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

DEFENDANT'S MOTION TO SUPPRESS
PRE- AND POST-ARREST STATEMENTS          16          CASE NO. CR-18-00450-JD

23.  Accordingly, the government cannot meet its "heavy burden" of proving that it obtained an

unequivocal waiver before commencing its interrogation of Mr. Chen.  It follows that Mr. Chen's

statements must be suppressed.

      2.      The Government's Failure To Advise Mr. Chen Of His Miranda Rights And The Consequences Of Waiver In Mandarin Precludes The Purported Waiver From Being Knowing and Intelligent

In a situation where the suspect is a foreign national, language barriers are highly relevant

to a suspect's ability to understand his rights.  *See Amano*, 229 F.3d at 804–05.  The Ninth Circuit

has stated that language difficulties may impair the ability of a person in custody to waive his

Miranda rights in a free and aware manner.  *See United States v. Gonzales*, 749 F.2d 1329, 1335-

36 (9th Cir. 1978).  Where the suspect has language difficulties, the Ninth Circuit determines the

validity of a waiver by considering the suspect's level of understanding of English, *see United

States v. Bernard S.*, 795 F.2d 749, 752 (9th Cir. 1986) (defendant "admitted that he studied

English through seventh grade."); *see also Amano*, 229 F.3d at 805 ("Defendant appeared to

understand and converse comfortably in English."), and whether the warnings were properly

given in the suspect's native language, *see Martinez*, 588 F.2d at 1235 ("We assume… that if

Miranda warnings are given in a language which the person being so instructed does not

understand, a waiver of those rights would not be valid.").

Here, Mr. Chen has a limited ability to understand and read English.  Chen Decl. ¶ 11.

His language difficulties are littered throughout the audio recording and are readily identifiable

during the Miranda process.  Initially, the agents read Mr. Chen his Miranda rights in English and

asked whether he understood his rights, to which Mr. Chen responded, "uh huh."  *See, e.g.,*

Krotoski Decl. ¶ 3, Ex. 1 (at 0:01:17, 0:01:29, 0:01:39).  Mr. Chen's noncommittal response is

not indicative nor remotely demonstrative that he actually understood his rights, particularly in

light of the fact that Mr. Chen's native language is Mandarin and he has demonstrated *no* ability

to "converse comfortably in English."  Chen Decl. ¶ 11.  Mr. Chen spends a limited time in the

U.S. each year.  During that time, Mr. Chen is surrounded by other Mandarin-speaking family

and persons.  Chen Decl. ¶ 3.

Morgan, Lewis &
Bockius LLP
Attorneys at Law
Silicon Valley

DEFENDANT'S MOTION TO SUPPRESS
PRE- AND POST-ARREST STATEMENTS     17     CASE NO. CR-18-00450-JD

1    When asked whether he waived his rights, Mr. Chen repeatedly sought clarification from

2    Special Agent Huang about what was meant by "waive."  Krotoski Decl. ¶ 3, Ex. 1 (at 0:03:07,

3    0:05:45) ("Ah, why did he say that you need to waive your rights?"); Chen Decl. ¶¶ 13, 15.  That

4    Mr. Chen was required to seek clarification in Mandarin further illustrates his lack of

5    understanding of the English recitation of the Miranda warnings.  Additionally, Special Agent

6    Huang *failed* to properly recite the Miranda warnings.  At no point did Special Agent Huang, in

7    her exchange with Mr. Chen, warn him that any statements he made could be used against him in

8    a court of law.  *See, e.g.*, Krotoski Decl. ¶ 3, Ex. 1 (at 0:05:34 – 0:10:14).  It follows that Mr.

9    Chen did not, and *could not*, make a voluntary, knowing, and intelligent decision to waive his

10   rights because he did not know about his privilege against self-incrimination.

11   A waiver can never be knowing and intelligent if the government obfuscates the scope of

12   a critical Miranda right.  *Miranda*, 384 U.S. at 444.  Though there is no precise formulation of the

13   warnings, *Miranda* provides that the warnings are "in the absence of a fully effective equivalent,

14   *prerequisites* to the admissibility of any statement made by a defendant."  *Id.*, at 476 (emphasis

15   applied).  There was no "fully effective equivalent," just the failure to warn Mr. Chen of all his

16   rights.  Even if the English recitation of the Miranda warnings was proper and Mr. Chen

17   understood them, it "does not cure the constitutional infirmity," because of the confusion created

18   by the two inconsistent warnings.  *Botello-Rosales*, 728 F.3d at 867 ("Even if [defendant]

19   understood the English-language warnings, there is no indication in the record that the

20   government clarified which set of warnings was correct."); *see also United States v. San Juan-*

21   *Cruz*, 314 F.3d 384, 388-89 (9th Cir. 2002) ("When a warning, not consistent with *Miranda*, is

22   given prior to, after, or simultaneously with a *Miranda* warning, the risk of confusion is

23   substantial, such that the onus is on the Government to clarify to the arrested party the nature of

24   his or her rights under the Fifth Amendment.").  Such an error on the part of the government is

25   fatal as it materially affected Mr. Chen's ability to make an informed waiver decision.

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

DEFENDANT'S MOTION TO SUPPRESS
PRE- AND POST-ARREST STATEMENTS                18                 CASE NO. CR-18-00450-JD

1

2

       3.      The Government Cannot Cure Its Defective Miranda Warnings By Claiming That Mr. Chen Signed A Waiver Form Because Mr. Chen Could Not Read The Waiver Form

3

      In addition to the above, as one factor, courts resolve the issue of whether a waiver was

4

valid by looking to whether the suspect was given the Miranda warnings in a written form that he

5

could read and understand.  *Gonzales*, 749 F.2d at 1336 ("Even if [defendant] spoke very poor

6

Spanish and appellant spoke very poor English, the written Spanish would have conveyed to

7

[defendant] a sufficient understanding of his rights.").  However, the factual circumstances are

8

important.  In cases where the court has found the waiver to be valid, it has based its finding on

9

the suspect's ability to *read* the written Miranda warnings and *understand* the nature of his rights

10

and consequences of abandoning them.  *See id.*; *see also Martinez*, 588 F.2d at 1227; *Heredia-*

11

*Fernandez*, 756 F.2d at 1415.

12

      That Mr. Chen signed a waiver form is not dispositive of the critical question of whether

13

he made the waiver with a full awareness of the *nature* of his Miranda rights and the

14

*consequences* of abandoning them.  *See Bernard S.*, 795 F.2d at 753, n. 4 (quoting *Binder*, 769

15

F.2d at 599)  In contrast to *Gonzales*, Mr. Chen could not read, let alone understand, his Miranda

16

rights in its written form because he was not wearing his glasses at the time he was directed to

17

sign the form.

18

      He made this much clear to the agents:

19

20

Mr. Chen:     I cannot see clearly without glasses.
Agent:        Can you see this clearly?
Mr. Chen:     This is blurry.

21

22

      Krotoski Decl. ¶ 3, Ex. 1 (at 0:18:44-0:18:48).  The government may not therefore rely on

23

the signed waiver form as evidence that Mr. Chen *understood* what he was waiving.  Because Mr.

24

Chen suffers from poor eyesight and is unable to read or see things clearly without his glasses, he

25

could not read the waiver form.  Chen Decl. ¶ 25.  Accordingly, Mr. Chen could not voluntarily,

26

knowingly, and intelligently waive his rights and his subsequent statements must be suppressed.

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

1

4.      Mr. Chen Was Not In The Right State Of Mind To Understand The Nature
        Of His Miranda Rights And The Consequences Of Abandoning Them

2

3       Courts look to the defendant's subjective state of mind at the time of waiver to determine

4    its validity.  *See United States v. Wolf*, 813 F.2d 970, 975 n.16 (9th Cir. 1987).  At the time Mr.

5    Chen signed the waiver, his mental state was such that he could not possibly have understood its

6    meaning or its consequences.

7       Mr. Chen had only recently returned to the U.S. after a lengthy flight from Beijing.  Chen

8    Decl. ¶ 5, Exs. 1, 2.  He was jetlagged, adjusting to the 8-hour time difference, and *asleep* when

9    the police barged into his home before 6:30 a.m. on January 23, 2019.  *Id*. ¶ 7.  He woke to the

10   noise and commotion created by the agents' entry into his home and was arrested and subjected to

11   immediate interrogation.  *Id*., ¶¶ 8, 11.  Mr. Chen was scared, concerned, and uncertain as to what

12   was happening to him.  *Id*., ¶ 8.  But even more so, Mr. Chen was concerned for *his mother*.  *Id*.,

13   ¶¶ 7-8.

14      The effect that Mr. Chen's mother's presence throughout this entire ordeal had on his state

15   of mind cannot be ignored.  Mr. Chen's mother has health issues and her welfare was all that Mr.

16   Chen could think of during the custodial interrogation.  *Id*., ¶¶ 7-8, 29.  He repeatedly asked the

17   agents about his mother's welfare, whether she had taken her medicine, whether she could eat,

18   whether she could lie down, and whether she would be told what was happening to him.  Krotoski

19   Decl. ¶ 3, Ex. 1 (at 0:11:56) ("Then could you tell my mom later, what exactly is the reason.");

20   *id*., ¶ 3, Ex. 1 (at 0:45:12) ("What's wrong? My mom wants to go to the restroom."); *id.*, ¶ 3, Ex.

21   1 (at 1:06:42)  ("Where is my mom?"); *id.*, ¶ 3, Ex. 1 (at 1:06:53) ("Is OK my mom?"); *id.*, ¶ 3,

22   Ex. 1 (at 1:50:31) ("She has high blood pressure."); *id.*, ¶ 3, Ex. 1 (at 1:53:23) ("You just lie

23   down, you need to be cautious about your blood pressure. It is OK here.").  That Mr. Chen's

24   mother repeatedly interrupted her son's custodial interrogation only acted as a further reminder to

25   Mr. Chen that his mother was present and witnessing her son's arrest.  *See, e.g., id.*, ¶ 3, Ex. 1 (at

26   0:18:33, 0:23:58: 0:25:08, 0:45:05: 0:45:16, 1:10:16, 1:10:26, 1:10:32, 1:11:09, 1:48:35, 1:50:27,

27   1:50:38, 1:51:42, 1:50:51, 1:52:03, 1:52:29, 1:52:47, 1:52:53, 1:53:04, 1:53:26, 1:53:36.).  These

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

DEFENDANT'S MOTION TO SUPPRESS
PRE- AND POST-ARREST STATEMENTS          20          CASE NO. CR-18-00450-JD

1   constant references to his mother demonstrates that Mr. Chen's mind was focused on his mother

2   and not himself.

3          Each of the factors set out above, considered in the totality of the circumstances,

4   establishes that Mr. Chen did not voluntarily, knowingly, and intelligently waive his Miranda

5   rights.  The oral advisements were not clear— both because he cannot clearly understand English

6   and because Special Agent Huang bungled the Mandarin advisement—and he was not able to

7   read the waiver form.  Even if they were clear, which they were not, Mr. Chen was of such a

8   confused, scared, concerned, and preoccupied state of mind that he did not, and could not,

9   understand the meaning and consequences of waiving his rights.  Accordingly, Mr. Chen did not

10  voluntarily, knowingly, and intelligently waive his Miranda rights, and his subsequent statements

11  must be suppressed.  *Miranda*, 384 U.S. at 444.  The inquiry can end here.

12          **D.   MR. CHEN'S STATEMENTS WERE INVOLUNTARY, THE PRODUCT
             OF COERCION AND NOT THE PRODUCT OF A FREE AND RATIONAL
13           WILL**

14          Even if the court finds that Mr. Chen did not invoke his right to counsel and made a

15  voluntary, knowing, and intelligent waiver of his rights, his statements must still be suppressed if

16  they were not given voluntarily.  *Lego v. Twomey*, 404 U.S. 477, 489 (1972); *United States v.*

17  *Pinion*, 800 F.2d 976, 980 (9th Cir. 1986).  The court's focus is on "whether [the] defendant's will

18  was overborne by the circumstances surrounding the giving of [the] confession," an inquiry that

19  "takes into consideration the totality of all the surrounding circumstances—both the

20  characteristics of the accused and the details of the interrogation." *Dickerson v. U.S*., 530 U.S.

21  428, 434 (2000).  The test of voluntariness is well-established: "Is the confession the product of

22  an essentially free and unconstrained choice by its maker?... The line of distinction is that at

23  which governing self-direction is lost *and compulsion, of whatever nature or however infused,*

24  propels or helps to propel the confession." *Collazo v. Estelle*, 940 F.2d 411, 416 (9th Cir. 1991)

25  (quoting *Culombe v. Connecticut*, 367 U.S. 568, 602 (1961)) (emphasis added).  The

26  voluntariness inquiry "is not limited to instances in which the claim is that the police conduct was

27  inherently coercive.  It applies equally when the interrogation techniques were improper only

28  because, in the particular circumstances of the case, the confession is unlikely to have been the

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

DEFENDANT'S MOTION TO SUPPRESS
PRE- AND POST-ARREST STATEMENTS          21          CASE NO. CR-18-00450-JD

1   product of a free and rational will." *Miller v. Fenton*, 474 U.S. 104, 110 (1985) (internal citations

2   omitted); *see also Wolf*, 813 F.2d at 974 (voluntariness determination focuses on the "defendant's

3   state of mind at the time of confession").  The voluntariness determination must be decided on the

4   peculiar, individual set of facts of each case.  *Culombe v. Connecticut*, 367 U.S. 568, 622 (1961).

5   The burden of demonstrating that a confession is voluntary lies with the government.  *Brown v.*

6   *Illinois*, 422 U.S. 590, 604 (1974); *United States v. Crespo de Llano*, 838 F.2d 1006, 1015 (9th.

7   Cir. 1988).

8           Here, Mr. Chen's statements were not "the product of an essentially free and

9   unconstrained choice." *Collazo*, 940 F.2d at 416 (quoting *Culombe*, 367 U.S. at 602).  An

10   examination of the circumstances leading up to, and including, the interrogation reveals that Mr.

11   Chen's statements were not statements made by a rational or informed intellect, but of a person

12   with significant language difficulties, an inexperience of the criminal justice system, and an

13   ignorance of the repercussions of making statements to the agents in the absence of counsel.  Mr.

14   Chen's statements were the product of police coercion, improper questioning tactics, and false

15   representations that resulted in an overbearing of his free will.  *See United States v. Preston*, 751

16   F.3d 1008, 1026 (9th Cir. 2014).  As a result, the totality of circumstances surrounding the giving

17   of statements weighs heavily in favor of a finding that they were not made voluntarily.

18           In *Rodriguez*, the Ninth Circuit, in reversing the defendant's conviction, held that the

19   tactics employed by officers when questioning a suspect is a relevant factor in determining the

20   voluntariness of a confession.  *Rodriguez v. McDonald*, 872 F.3d 908, 922 (9th Cir. 2017).

21   There, the officers made various statements designed to pressure the defendant into cooperating.

22   *Id.*, at 923-24.  In particular, the officers told the defendant that his cooperation would result in

23   leniency and that the prosecutor would be told about the defendant's cooperation.  *Id.* at 924.  The

24   officers also told the defendant that he would be charged later that day, thereby "increasing the

25   urgency of cooperation." *Id*.  The court found that these statements suggested to the defendant

26   that "he would be penalized if he exercised his rights guaranteed to him under the Constitution of

27   the United States." *Id.*

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

DEFENDANT'S MOTION TO SUPPRESS
PRE- AND POST-ARREST STATEMENTS          22          CASE NO. CR-18-00450-JD

Here, like in *Rodriguez*, the agents' tactics coerced Mr. Chen into making statements that were not the "product of an essentially free and unconstrained choice." *Collazo*, 940 F.2d at 416. The agents repeatedly told Mr. Chen that they'd "like to say that you cooperated and [the prosecutor] would like to see that you cooperated," and that cooperation "could make a big difference down the road." Krotoski Decl. ¶ 3, Ex. 1 (at 1:44:30, 1:44:36). The agents also repeatedly told Mr. Chen that "you will go to prison today… but before that, if you want to talk to us." *Id.*, ¶ 3, Ex. 1(at 0:07:31). Further, the agents repeatedly challenged the veracity of Mr. Chen's responses, telling him that they "don't believe his story," that he is "lying," that he will be in "some serious trouble," and that he could go to prison for "twenty years." *Id.*, ¶ 3, Ex. 1(at 1:33:17, 1:43:43). The following statement is illustrative of the agents' coercive tactics and representative of the way in which the agents generally conducted the interrogation:

> Agent:    You're going to be in trouble if you tell the same story to members of the community. Like what we're talking about here is smuggling goods into the United States against the law. Importing counterfeit goods. It's twenty years in federal prison and if you tell the same story to members of the community that are sitting on a criminal trial, you're going to be in some serious trouble. They're not going to believe this story. We don't believe this story. We want to know, we're going to give you one more chance and that's it. When we submit, when Dan submits his report to the prosecutor, we'd like to say that you cooperated and they would like to see that you cooperated.

*Id.*, ¶ 3, Ex. 1(at 1:43:43). This statement highlights the coercive nature of the interrogation and the pressures imposed on Mr. Chen to make incriminating and *involuntary* statements. The agents were verbally aggressive toward Mr. Chen during the interrogation, challenged the veracity of his statements, repeatedly accused John of lying, and overhyped the volume of evidence they currently possessed. *See, e.g., id.*, ¶ 3, Ex. 1 (at 0:43:05) ("Questions we're asking you, we know the answers to but we need your cooperation."); *id.*, ¶ 3, Ex. 1(at 0:58:42) ("It is obvious that you are not being truthful – you know what I mean?"); *id.*, ¶ 3, Ex. 1 (at 1:21:37) ("This is the third time I'm telling you. We know a lot of it, but we would like you to tell us the truth."); *id.*, ¶ 3, Ex. 1 (at 1:30:14) ("'I'm in China,' blah blah blah. For somebody that's the owner and president of a company… Like you don't know much of anything?"); *id.*, ¶

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

DEFENDANT'S MOTION TO SUPPRESS
PRE- AND POST-ARREST STATEMENTS                    23                    CASE NO. CR-18-00450-JD

3, Ex. 1(at 1:33:17) ("We're not going to sit here all day and listen to any more of your lies."); *see also* Chen Decl. ¶ 28.  The statements and accusations levelled at Mr. Chen increased not only the level of tension in the interrogation room, but also the coercive nature of the environment.  These tactics are precisely of the kind cautioned by the Ninth Circuit in *Rodriguez* that would render any subsequent statements involuntary.

### E.   A SUPPRESSION HEARING IS NOT REQUIRED ON AN INVOCATION OF COUNSEL BUT IS REQUIRED TO RESOLVE OTHER CONTROVERTED FACTUAL ISSUES

In the Ninth Circuit, "[a]n evidentiary hearing on a motion to suppress need be held only when the moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the trial court to conclude that contested issues of fact exist."  *United States v. Howell*, 231 F.3d 615, 620 (9th Cir. 2000); *see also United States v. Batiste*, 868 F.2d 1089 (9th Cir. 1989) (decision to hold an evidentiary hearing based on the fact that the defendant did not have complete information regarding his arrest at the time the motion to suppress was filed and could obtain information from the officers' testimony at the hearing).  The record is clear that Mr. Chen invoked his right to counsel.  *See* Krotoski Decl. ¶ 4, Ex. 2 at p. 4 (Excerpt 4).  The suppression motion can be granted on the clear record, particularly based on established precedent.

If the Court considers other grounds raised in this motion, a suppression hearing will be required to resolve other controverted facts and understand the circumstances of Mr. Chen's custodial interrogation.  In particular, the suppression hearing will be necessary to resolve material issues concerning the totality of the circumstances in which the involuntary statements were obtained and the extent to which the Mandarin language was used to misinform Mr. Chen of his Miranda rights.  A suppression hearing will also allow the court to ask questions arising out of the audio recording and clarify the circumstances of what transpired during the custodial interrogation.

## IV.   PRODUCTION OF STATEMENTS OF GOVERNMENT WITNESSES

Under Fed. R. Crim. P. 12(h), Mr. Chen requests production of Jencks Act and Fed. R. Crim. P. 26.2 statements for any government witnesses with sufficient time to review in advance of the suppression hearing.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

1

## V.       CONCLUSION

2

For the foregoing reasons, Defendant Lixiong Chen respectfully asks that the Court grant

3 his Motion to Suppress on the written record or, in the alternative, schedule an evidentiary

4 hearing on his Motion to Suppress.  A Proposed Order is concurrently filed with this motion.

5

Dated: March 06, 2019                          Respectfully Submitted,

6
MORGAN, LEWIS & BOCKIUS LLP
7                                              Mark L. Krotoski

8

By _____
9                                                /s/
Mark L. Krotoski
10                                             Attorneys for Defendant
LIXIONG CHEN, a/k/a John Chen

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

DEFENDANT'S MOTION TO SUPPRESS
PRE- AND POST-ARREST STATEMENTS                25                CASE NO. CR-18-00450-JD